DEE PUCKETT V. THE STATE.

No. 18473. Delivered June 24, 1936.
Rehearing Denied October 28, 1936.

The opinion states the case.

*Bozeman & Cathey,* of Quitman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 75 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Will McWhorter by shooting him with a gun .

The homicide occurred on the 12th of April, 1935, in a field near the home of appellant. There appears to have been a controversy between appellant and deceased concerning the fact that deceased had rented some land which appellant had been farming. According to the version of appellant, his wife had told him that deceased had come to their home in his absence and cursed her. When the statement was made to him he went to a field where deceased was plowing and questioned deceased about the matter. A fight ensued in which deceased attempted to cut him with a knife. Returning home, he got his gun for the purpose of going to town and reporting the matter. As he went down the road deceased again advanced upon him with a knife and he shot him in self-defense. The State's testimony was to the effect that after appellant had procured his gun he went back to the field and shot deceased twice while he was plowing. Deceased was making no demonstration at the time. A physician testified that one of the wounds in the body of deceased was in the back and the other in the side.

Bills of exception 1 and 2 relate to the cross-examination of appellant's wife. On her direct-examination she had testified that deceased had come to her home in the absence of her husband and cursed her; that when her husband returned she told him what deceased had said to her; that at the time deceased was plowing in the field near her house; that appellant went to the field to see deceased; that they had a fight, in which deceased drew a knife on appellant; that appellant came to the house and got his gun, saying that he was going to town; that she followed him down the road; that deceased approached appellant with a knife; that appellant shot deceased just as deceased whirled. In cross-examining the witness, the district attorney attempted to show that her testimony was fabricated. Illustrative of questions propounded by him, he asked the witness if she and other named parties met in her home at a stated time and planned a defense for appellant. The ques-

tions were pointed in an effort on the part of the district attorney to make the witness admit that she had not witnessed the homicide.

The statute (Art. 714, C. C. P.) forbidding the wife to become a witness against her husband, does not inhibit her cross-examination when she is introduced as a witness in his behalf. The State may show that she had no opportunity for observation and that the testimony on direct-examination was false. The usual tests of cross-examination apply to matters germane and pertinent to her direct-examination. Soderman v. State, 260 S. W., 607, and authorites cited. We deem the questions shown in the bills of exception to have been proper.

Bills of exception 4 and 5 are concerned with appellant's objections to the introduction in evidence of certain portions of the dying declaration of deceased. The qualification to bill of exception 4 shows that in the charge the court restricted the jury's consideration to only those parts of the declaration appellant agreed to have submitted. We quote from the qualification: "In defendant's seventh exception to the court's charge a request was made that all of the declaration save and except the following be withdrawn from the jury." Then follows the dying declaration, which we quote:

"My name is Will McWhorter. On Friday afternoon, April 12th, I was out in the field plowing, about 150 yards from Dee Puckett's house, on Mr. Robinson's place. About five or six o'clock in the afternoon, Dee Puckett, who lives about ¾ of a mile west of me came to the field where I was plowing. Aubrey Pugh and Roy Minshew was with him. When Dee Puckett came up he said: 'I want to talk to you.' And I said 'All right;' Dee Puckett said 'What do you mean working around my house trying to take possession, I live there.' I said: 'I am not trying to take possession. I have that place rented and I am trying to work the land.' Dee Puckett then asked me if I thought he was afraid of me. I told him, no, that I did not think he was afraid of me. The place Dee Puckett lives on is the Robinson place. I have it rented from Ed. Shamburger. Dee Puckett then said, 'Why don't you come up and talk to me.' I said 'I do not have any business to talk to you about.' About that time Dee Puckett hit me upon the side of the head with his fist. Then he grabbed me and hugged me. We both went down on the ground with Dee Puckett on top of me. I then rolled over on top of him. I then told Dee Puckett that I did not want to hurt him. About that time Roy Minshew and Aubrey Pugh separated us. Dee Puckett then walked off in

the direction of his house. Aubrey Pugh and Roy Minshew stayed there with me for a few minutes and then they left. I plowed a round and when I got back to the west end of the field, I saw Dee Puckett coming with his gun. I started taking my mule out. Dee Puckett came up to within ten or twelve feet of me and said: 'Stop.' I was going away from him at the time. I stopped and he said, 'Don't come towards me.' I told him that I was not coming towards him, that I was going to the house. I started off and Dee Puckett shot me in the back. I fell when the first shot hit me. After I fell Dee Puckett shot me again. The second shot hit me in the side. After he shot me the second time he turned and went back towards his house. I lay there in the field about an hour before my wife came down there.

"I do not know why Dee Puckett shot me. He did not say why he shot me. Dee Puckett was pretty full of whisky when he first came to the field this afternoon. I smelled whisky on his breath. That is all I know about this matter. I have heard this statement read by B. B. Gist, county attorney, and it is true and correct. I have been told by Dr. A. B. Moody that I cannot live, and I make this statement believing that is true."

As qualified, the bills of exception fail to reflect reversible error.

We think sufficient predicate was laid for the introduction of the declaration. The attending physician testified that he told deceased he could not live and deceased replied that he realized that he was going to die. The proof also showed that he was conscious and sane. No one asked him to make a specific statement, and he was neither persuaded nor coerced to make any declaration.

Appellant sought to have the jury instructed that he had a right to arm himself and go upon the premises where the homicide occurred. Appellant's right of self-defense was not limited in the charge by an instruction on provoking the difficulty, or otherwise. He was given the perfect right of self-defense on every defensive theory. Hence the requested charge was properly refused. Branch's Ann. P. C., sec. 1950; Carey v. State, 167 S. W., 368.

The sentence provides that appellant shall be confined in the penitentiary for not less than 5 nor more than 75 years. It is reformed in order that it may be shown that the confinement shall be for not less than 2 nor more than 75 years.

As reformed, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In his motion for rehearing appellant presents so-called assignments of error, and since errors in cases appealed to this court must be presented by bills of exceptions, we have had difficulty in following appellant's reasoning based on his said assignments of error. If what is called appellant's first assignment of error is intended as renewing complaint of our disposition of his bill of exceptions No. 1, the matter is without merit. No part of our original opinion is referred to or urged as erroneous. Appellant sets out at length the testimony given by his wife who swore strongly for the defense. If we understand the complaint under discussion, it is aimed at the cross-examination of said wife as a witness by the State's attorney. The whole effect and purpose of the cross-examination of said wife was to show that her testimony was fabricated. We note that practically all of the questions propounded to her on cross-examination were answered in the negative. We know of no rule of this or any other court which would deny to the State its right to try to lay a fair predicate for the impeachment of the wife by showing that she was a party to a fabricated defense, and that her testimony was of that kind. Said bill of exceptions with its qualifications covers nineteen pages of the transcript, in which appears the testimony both upon direct and cross-examination. The so-called assignment of error sets out generally that the trial court erred in permitting the State to cross-examine appellant's wife upon matters about which she did not testify in her direct examination, and which were not germane thereto,—no particular question or answer being complained of. Nothing in Art. 714, C. C. P., or any of the authorities cited, supports appellant's position. It is as though he was complaining of a cross-examination of his wife wherein she was only asked questions whose whole effect and purpose was to show that she was at another and different place at the time of the commission of the alleged offense, and at such place doing certain things with certain other named persons,—material only as showing her presence at the time and place asked about,—which necessarily would be

a cross-examination upon matters about which she had not testified upon her direct testimony, but which would nevertheless be very germane thereto, because tending to show that her testimony was false. We are unable to uphold appellant's contention. We further observe that in any event when the witness categorically gives negative answers to all such cross-questions, she could not be said to be thus compelled to give evidence against her husband.

Appellant has another so-called assignment of error, asserting that the trial court erred in permitting the State to introduce in evidence "The parts of the dying declaration of deceased objected to by appellant." This is followed in appellant's motion by statements at length of the testimony, including the whole of the written dying declaration signed by deceased and read to the jury. We have again carefully examined said statement in the light of appellant's complaint, and the qualifications placed on this bill,—and find nothing in the bill which might not have been fully testified to by deceased if a witness, and find in the court's qualification an additional statement to those quoted by us in our former opinion, and to make clear our views we again quote what the trial judge said, as follows: "In defendant's seventh exception to the court's charge a request was made that all of the declaration save and except the following be withdrawn from the jury. *The court granted this request and instructed the jury as follows:*" Then follows in the bill of exceptions the written dying declaration as copied in our former opinion. No exception appears to have been taken to this, and in our view of the matter this eliminated from the written dying declaration any matter which might otherwise have been deemed objectionable. We are not able to agree with appellant's complaint in this regard.

The motion for rehearing will be overruled.

*Overruled.*